1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9   UNITED STATES OF AMERICA,

10          Plaintiff,                    No. CIV 2:99-cv-814-DFL-JFM

11       vs.

12   DAVID WARREN,

13          Defendant.                    <u>ORDER</u>

14   _____/

15          On June 2, 2011, the undersigned held a hearing on plaintiff's May 3, 2011

16   motion to compel post-judgment discovery.  Lauren Cataldi appeared for plaintiff.  David

17   Warren appeared in pro per.  Upon review of the motion and the documents in support and

18   opposition, discussion of the parties and good cause appearing therefor, THE COURT FINDS

19   AS FOLLOWS:

20               FACTUAL AND PROCEDURAL BACKGROUND

21          This lawsuit, filed by plaintiff on April 23, 1999, was an action to reduce to

22   judgment outstanding federal tax assessments.  On April 28, 2000, the undersigned issued

23   findings and recommendations recommending that plaintiff's motion for summary judgment be

24   granted and judgment be entered in favor of plaintiff in the amount of $392,926.25, plus accruals

25   and other statutory additions as provided by law.  <u>See</u> Doc. No. 71.  On May 18, 2000, the

26   Honorable David F. Levi adopted those recommendations in full and entered judgment

1   accordingly.  As of September 2009, plaintiff claims that the entire judgment amount plus

2   interest remains outstanding.

3           On September 22, 2009 and pursuant to Federal Rule of Civil Procedure 69,

4   plaintiff served interrogatories and requests for production in aid of judgment and execution on

5   defendant.  As of the filing of the instant motion, plaintiff claims it has not received any

6   responses to its discovery requests.

7           In his opposition, defendant asserts that sometime after receiving plaintiff's

8   discovery requests, he became concerned that he would be unable to respond fully and

9   completely and, thereupon, sent a letter to plaintiff asking if his best efforts would be sufficient

10  when responding to the discovery requests.  Opp'n at 3.  Defendant claims that plaintiff

11  responded by stating that (1) an explanation that defendant could not completely comply was not

12  acceptable; (2) defendant's best efforts would not be acceptable; and (3) defendant should

13  consult with an attorney.  Id.

14          Thereafter and allegedly based on the opinion of unretained counsel who

15  allegedly cautioned defendant that it appeared he was being set up for criminal prosecution,

16  defendant responded on April 29, 2010 to plaintiff's interrogatories and requests for production

17  as follows:  "Based on the advice of council [sic], I assert my right under the 5th Amendment of

18  the United States Constitution and respectfully decline to respond."  See Opp'n, Ex. E.

19          In reply, plaintiff asserts it did not receive defendant's blanket objection.

20  Nonetheless, it argues a dispute remains as to defendant's assertion of his right against self-

21  incrimination.

22          Following the June 2, 2011 hearing on this matter, defendant filed a supplemental

23  opposition to plaintiff's motion to compel.  Defendant opposes the requests for production and

24  interrogatories on multiple grounds, including pursuant to the Fifth Amendment.  However,

25  because plaintiff's motion to compel challenges only defendant's objection to discovery on Fifth

26  Amendment grounds, the court will consider that objection only.

DISCUSSION

Federal Rule of Civil Procedure 69 provides, in pertinent part: "In aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person-including the judgment debtor-as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  "The discovery contemplated by Rule 69(a) is a distinct phase of the litigation with a narrow focus.  It is solely to enforce the judgment by way of the supplemental proceedings." Danning v. Lavine, 572 F.2d 1386, 1390 (9th Cir. 1978).  One purpose of such special discovery is "to identify assets that can be used to satisfy a judgment." 1ST Tech., LLC v. Rational Enters. Ltd., 2007 WL 5596692, at *4 (D. Nev. Nov.13, 2007). Another purpose is "to discover concealed or fraudulently transferred assets." Fid. Nat'l Fin., Inc. v. Friedman, 2007 WL 446134, at *2 (D. Ariz. Feb.7, 2007); see also British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., 200 F.R.D. 586, 589 (W.D. Tex. 2000) ("British International II") (noting that post-judgment discovery can be used to gain information relating to the "existence or transfer of the judgment debtor's assets").

Generally, the scope of post-judgment discovery is broad.  "'[T]he judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'"  1ST Technology, 2007 WL 5596692 at *4 (quoting British International II, 200 F.R.D. at 588).  Further, due to its broad scope, a party is free to use any means of discovery allowable under the Federal Rules of Civil Procedure.  Sec. and Exch. Comm'n v. Tome, 1987 WL 9415, at * 1 (S.D.N.Y. Apr.3, 1987); see also Fed. R. Civ. P. 69 advisory committee's note to 1970 Amendment ("The amendment assures that, in aid of execution on a judgment, all discovery procedures provided in the rules are available[.]").  "A judgment creditor is therefore ordinarily entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery [of] the identity and location of any of the judgment debtor's assets, wherever located." British Int'l Ins. Co. v. Seguros La Republica,
/////

S.A., 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000) ("British International I") (citations omitted).

A debtor is entitled to assert certain privileges to post-judgment discovery. "What is privileged is defined by the Federal Rules of Evidence; these rules include the privilege against self-incrimination." Campbell v. Gerrans, 592 F.2d 1054, 1057 (9th Cir. 1979); see Hickman v. Taylor, 329 U.S. 495, 507-08 (1947). The Fifth Amendment protection of an individual's right against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." McCarthy v. Arndstein, 266 U.S. 34, 40 (1924). "The principle of Fifth Amendment protection has been construed to permit the privilege to be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" Campbell, 592 F.2d at 1057 (quoting Kastigar v. United States, 406 U.S. 441, 444 (1972). As the Campbell court explains, lower courts have repeatedly held that the privilege against self-incrimination justified a person in refusing to respond to interrogatories. 592 F.2d at 1057.

The Fifth Amendment, however, only protects a person from "compelled ... Testimonial Communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1976). Accordingly, the Fifth Amendment is limited to protecting a person from being compelled to produce documents under circumstances where such production amounts to a testimonial communication in a proceeding wherein their legal jeopardy is at stake. See, e.g., id. at 409-10. Notwithstanding, even when documents themselves are not privileged, the "act of production" of the non-privileged documents may be sufficiently testimonial in nature as to make the privilege applicable to their production by an individual. United States v. Doe, 465 U.S. 605, 610-12 (1984). The circumstances may be such that, by selecting and producing the documents themselves, the individual is admitting the papers existed, that they were in his possession or control, and that they were authentic, all of these admissions providing elements of a case against the individual. See United States v. Hubbell, 530 U.S. 27, 36-38 (2000).

1     Additionally, the Fifth Amendment privilege applies to the business records of a sole proprietor.

2     United States v. B & D Vending, Inc., 398 F.3d 728, 733 (6th Cir. 2004) (quoting Bellis v.

3     United States, 417 U.S. 85, 87 (1974); United States v. G & G Adver. Co., 762 F.2d 632, 634

4     (8th Cir. 1985).

5           A district court retains discretion in its response to a party's invocation of the

6     Fifth Amendment.  Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 910 (9th Cir. 2008); see

7     Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1089 (5th Cir. 1979) (If invocation

8     of privilege prejudiced the other party, the district court "would be free to fashion whatever

9     remedy is required to prevent unfairness.").  "(T)he privilege normally is not asserted properly

10     by merely declaring that an answer will incriminate."  Brunswick Corp. v. Doff, 638 F.2d 108,

11     110 (9th Cir. 1981).  Additionally, the Supreme Court has explained that the Fifth Amendment

12     protection against self-incrimination "does not extend to consequences of a noncriminal nature,

13     such as threats of liability in civil suits."  United States v. Apfelbaum, 445 U.S. 115, 125 (1980).

14           It is not necessary, of course, that the person to whom the question has been put

15     establish the precise manner in which he will incriminate himself by responding.  This would

16     make the privilege useless.  As the Supreme Court said in Hoffman v. United States, 341 U.S.

17     479, 486-87 (1951):

18           To sustain the privilege, it need only be evident from the implications of the
            question, in the setting in which it is asked, that a responsive answer to the

19           question or an explanation of why it cannot be answered might be dangerous
            because injurious disclosure could result.

20     The trial court must make this determination from the facts as well as from "his personal

21     perception of the peculiarities of the case."  Hoffman, 341 U.S. at 487.  If the court decides that

22     no threat of self-incrimination is evident, the defendant then bears the burden of showing the

23     danger of incrimination.  United States v. Neff, 615 F.2d 1235, 1240 (9th Cir.), cert. denied, 447

24     U.S. 925 (1980).

25     /////

26

Here, defendant asserts his Fifth Amendment right against self-incrimination against the following requests for production of documents:

**Req. for Prod. 2**: All documents, including but not limited to monthly, quarterly, or other periodic statements, cancelled checks, deposit slips, wire transfers, etc. regarding any domestic or foreign bank or other financial account, regardless of how such account is titled, over which you had signatory authority or other such control at any time during the period from the period in question.

**Req. for Prod. 3**: Copies of all credit, debt and/or ATM card statements of account, wherever located and regardless of whose name appears on the account(s), from the period in question, for such card(s) which you use or which you have signatory authority or other such control.

**Req. for Prod. 4**: Copies of all receipts, statements, deposit slips, wire transfer memoranda, debit slips, electronic mail messages, and other such documents reflecting any funds, stock and, or property having a value in excess of $500.00 transferred by: (1) you (individually or in any capacity); and (b) your spouse (individually or in any capacity) during the period in question.

**Req. for Prod. 5**: Copies of all correspondence, notes, memoranda, written by you or received by you regarding any account(s) identified in response to Document Request Nos. 1 through 4 above.

**Req. for Prod. 6**: Copies of all documents, including correspondence between you and your financial advisor(s) regarding any stocks, mutual funds, financial investments, etc., and/or transfers of funds during the period in question.

**Req. for Prod. 11**: Copies of all letters, notes, memoranda, and other such documents set or written by you to any attorney (including foreign attorneys) regarding the disposition, transfer, purchase, or sale of any asset owned by you or held on your behalf during the period in question.[1]

**Req. for Prod. 14**: Copies of your federal and state income tax returns for the period in question.

**Req. for Prod. 15**: Copies of all monthly telephone bills from September 31, 2006 to present.

In addition, defendant asserts his Fifth Amendment right against self-incrimination against the following interrogatories:

**Interrogatory No. 2**: Identify each person or entity for whom you performed services during the period in question and state the amount you were paid for your services or the amount you are owed for your services.

---

[1] Defendant also objects to this request by asserting attorney-client privilege. The court will not address this objection as it is not before it.

**Interrogatory No. 4**: Identify by name, address and telephone number each and every domestic and foreign bank and/or financial institution in which you have an account or over which you have signatory authority or other such control, and provide the account number, type of account, and account balance during the period in question.  In addition, identify the record owner or title of the account.

**Interrogatory No. 14**: Identify all sources of income for the following years: [2005-2009].

**Interrogatory No. 22**: Identify all credit, debit, and/or automatic teller ("ATM") cards which you use or control, regardless of whether such cards are titled in your name, during the period in question, and for each such card, identify, state or describe: (a) the name and address of the financial institution that issued the card (i.e. VISA, MasterCard, American Express bank, etc.); (b) the account number; and (c) the name(s) on the card.

**Interrogatory No. 25**: State whether you have filed with the Internal Revenue Service Federal income tax returns for the years 1999 to 2009? If your answer is affirmative, state: (a) the date that each return was filed; (b) the address or location of the IRS Service Center where the return was filed.

Defendant argues that because the purpose of post-judgment discovery is to determine what assets he currently owns, the information sought by plaintiff does not lend itself to that determination.  Instead, argues defendant, plaintiff plainly seeks those documents to implicate him.  Defendant also argues that the information sets him up for penal sanctions due to violations of state statutes and, thus, he seeks transactional and/or use immunity from state agencies.

The court has reviewed the discovery requests and finds that defendant fails to meet the modest standard set forth in Hoffman.  Although the scope of the discovery requests are broad, the court previously noted that "'the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'"  1ST Technology, 2007 WL 5596692 at *4 (quoting British International II, 200 F.R.D. at 588).  Additionally, nothing on the face of the requests for production and interrogatories would tend to incriminate.  For example, request for production No. 14 and interrogatory 25 both ask for information concerning defendant's income tax returns.  Assertions of Fifth Amendment rights against requests for income tax returns have been denied upon a finding that production of these

7

1   records is not self-incriminating.  See, e.g., Brunswick Corp., 638 F.2d at 110 ("On the record

2   before us we see no way in which answers to this interrogatory [asking whether appellant filed

3   income tax returns] would tend to incriminate").

4            Also not tending to incriminate are requests for production Nos. 2-6 and

5   interrogatories 4 and 22, which relate to defendant's interest in or ownership of real property and

6   financial accounts; requests for interrogatories 2 and 14 which are directed at what assets, if any,

7   are and were owned by defendant; request for production No. 15, which asks for copies of

8   defendant's monthly telephone bills; and interrogatories 2 and 14, which ask defendant to

9   identify his sources of income.  The Ninth Circuit has clarified that "a distinction between the

10  unpleasantness of possibly revealing assets to a creditor and the tendency to incriminate within

11  the meaning of the privilege must be drawn."  Brunswick Corp., 638 F.2d at 110.  Here, the

12  distinction is drawn in favor of disclosure.

13           Furthermore, in response to defendant's argument that the requests are overbroad

14  because they "in no way address defendant's current assets or ability to satisfy the judgment,"

15  the court notes that litigation in this case commenced on April 23, 1999.  Thus, the time period

16  from 1999 to the present is a reasonable time period for the scope of Rule 69 discovery.  This

17  type of discovery is designed specifically to aid in the enforcement of the court's judgment, and,

18  as noted above, its scope is necessarily very broad.  1ST Technology, 2007 WL 5596692 at *4.

19           Finally, to the extent defendant argues that he is entitled to transactional and use

20  immunity for his discovery responses, the court disagrees.  As discussed, the court does not find

21  that defendant's discovery responses have a tendency to incriminate him.  Thus, immunity is

22  unnecessary.

23           Accordingly, IT IS HEREBY ORDERED that:

24           1.  Plaintiff's motion to compel is granted; and

25  /////

26  /////

8

1          2.  Defendant shall submit supplemental responses to plaintiff's discovery

2    requests within thirty days of the date of this order.

3    DATED: July 28, 2011.

4

5

6    UNITED STATES MAGISTRATE JUDGE

7    /014;usa0814.mtc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26